### THE WILLIAM ORR.

### THE MAGGIE S. ROBINSON.

#### (District Court, N. D. New York. March 16, 1893.)

1. COLLISION—TUGS AND TOWS—ABSENCE OF HELMSMAN.
	The absence from his post of the helmsman of a canal boat in a tow does not render the boat at fault for a collision which the helmsman could have done nothing to prevent if he had been at his post.

2. SAME—PASSING IN NARROW CHANNEL.
	The tug O., with tow, bound up the Hudson river, met the tug C., with tow, coming down, about a mile below the Troy bridge, in a narrow channel, with slow current, and on a clear day. Each tug in passing hugged the shore as closely as prudent navigation would permit, but the tug R., with tow, following the C., attempted to pass between the O. and the C., and collided with the O.'s tow. *Held*, that the R. was in fault in attempting to pass.

3. SAME—STOPPING—CHANGING COURSE.
	Just before the collision the O. stopped, backed, and took in 250 feet of hawser; then, seeing that a collision was imminent, started ahead. The O. also changed her course after passing the R., thus drawing her tow towards that of the R. in midstream. *Held*, that the O. was also in fault.

In Admiralty. Libel by the owners of the canal boat W. H. Matthews against the steam tugs William Orr and Maggie S. Robinson for collision. Decree for libelants.

J. A. Hyland, for libelants.

G. B. Wellington, for The Orr.

C. D. Hudson, for The Robinson.

COXE, District Judge. The libelants, as owners of the canal boat W. H. Matthews, bring this action against the steam tugs Orr and Robinson to recover damages for a collision which was caused by the alleged negligence of both of the tugs. On the morning of July 26, 1890, the Matthews was being towed by the Orr from Albany to Troy. There were four boats in the tow, tailed one behind the other. The Matthews was the last, and was about 900 feet behind the tug. She was unloaded. When the Orr had reached a point about a mile below the Troy bridge where the river is about 500 feet wide she met the Robinson coming down the river with five canal boats in tow, arranged in two tiers, there being three in the first and two in the second tier. In passing each other the starboard boat of the Robinson's forward tier struck the boat immediately ahead of the Matthews, causing the bow of the latter to be deflected to starboard, thus producing a collision between her and the said boat of the Robinson's tow. The bow of the Matthews was injured considerably, the repairs costing $95.21. She was delayed nine days. A reasonable allowance for demurrage is $8 per day, or $72 in the aggregate. The entire damage occasioned by the collision is $167.21. No fault is imputed to the canal boat except that the helmsman was not on duty at the moment of the collision. The testimony for the libelants tends to show that he was at the helm, which he had put hard astarboard, and that nothing more could have been done by the canal boat to avoid the accident. It is, however, unnecessary to decide this question of fact, as the court is convinced that nothing the helmsman could have done would have prevented the collision.

The canal boat being free from fault, the question for the court to determine is whether it was the negligence of one or both of the tugs which caused the accident. There was just ahead of the Robinson another tug,—the Crandall,—with a tow of seven canal boats arranged in two tiers, there being four in the first and three in the second tier. A fourth tug,—the Manny,—with her tow, was going up the river. The day was clear and the approaching boats could easily see each other when half a mile, or more, away. The current in the river at this season of the year is slow, not being over two and a half miles an hour, but there was an ebb tide running. The first signal came from the Orr indicating that she wished to go to the left. This signal was assented to by the Robinson and the Crandall. The Crandall had started ahead of the Robinson, but the latter had overtaken her and at the time of the collision was either lapping the Crandall's second tier or was passing to the west of the Crandall and her tow. At all events there is no dispute that at the time of the collision the course of the Robinson lay between the courses of the other tugs. The evidence further establishes the fact that the channel is considerably narrower than the river and that the Orr was as near the west bank and the Crandall the east bank as prudent navigation permitted. The Robinson was manifestly in fault for attempting to pass the Crandall at this point. The Crandall started some 20 minutes ahead of the Robinson but had a much heavier tow than the Rob-

inson. The latter, long before the accident and when the boats were nearly a mile apart saw, or might have seen, the exact situation. Her duty to keep behind the Crandall was clear. It was a grave fault for her, in such circumstances, to crowd into a narrow channel between two passing tows when she could just as well have kept in the wake of the Crandall's tow. By taking the course she did she put the Orr into what the counsel for the Robinson aptly terms "a pocket." The Orr was not in fault for taking the west side of the channel. Her proposition to go to the left was agreed to by all.

Was she negligent in other respects? The court has read the testimony, and some portions of it several times, to reconcile, if possible, the contradictions and confusion which exist upon several material points. The court is unable, however, to reach a satisfactory conclusion as to the width of the channel at the point of collision; the position of the sand barge with reference to the same point; whether the Orr was ahead of the Manny or vice versa; whether the Crandall was in the center or on the eastern side of the channel; whether the Robinson was abreast of the Crandall's tow or was just lapping the last tier, and many other considerations which are important factors in determining the question of negligence as to the Orr. The testimony of the master of the Orr is not altogether clear, but there appears to be no doubt that when he was on the extreme western edge of the channel, just previous to the collision, he stopped, backed up and took in some 250 feet of hawser. Directly thereafter he saw that the "double-header" in his tow was going ahead and was about to hit the Robinson's tow, when he straightened up, pulled the boats clear, and started on again, the collision occurring almost immediately. It would seem that at such a time and in such an extremity this was a most hazardous maneuver, and that it may have contributed to the accident. Furthermore, the testimony indicates that after the tugs had passed, the Orr changed her course towards the center of the river, thus drawing her tow directly towards the tow of the Robinson. This unquestionably was unskillful seamanship. There is some evidence that it was necessary to avoid grounding, but the court is satisfied that it was an unwise proceeding. The impression produced by all the evidence is that the Orr was placed in a dangerous position, chiefly through the negligence of the Robinson, but that once there her own unskillful seamanship contributed to the disaster which befel the libelants' boat. It follows that the libelants are entitled to a decree against both tugs for $167.21, with interest thereon from August 4, 1890, and costs.